Okay, the next case before the court is CallWave Communications LLC v. AT&T Mobility LLC, case number 161684, an appeal from a decision of the District of Delaware. Mr. Bishop, five minutes. Yes, please. You may begin. Thank you, and may it please the court, my name is Greg Bishop and I'll be arguing on behalf of CallWave Communications. The invention described in the 933 patent has to do with making purchases on the internet or from some other merchant and having the charges for those show up on your phone bill rather than having to provide your personal financial information to a merchant who you may or may not know. This gives advantages to the consumer because he can keep his private financial information private and also it allows for the merchant to be able to customize the billing and the rates that's being charged to the customer. I'd like to get to what's a fundamental issue to me and I'd like to start by asking you, do you dispute that figure two relates to an unclaimed method? Well, figure two has elements into it that are not claimed. The claim is directed towards figure three, but the specification when it's describing figure two, it includes information that is also relevant to figure three. So I can't say that they're completely unrelated, but there are elements of figure two that are not claimed by the claim 13. There's nothing in any of the figures that shows anything that doesn't have a call involved, right? Well, it depends on what you mean by a call. There's an electronic communication of some data that goes over a telecommunications network. I'm talking about a telephone call. And in the preferred embodiment, the best mode that is described is a telephone call, but if you look at that telephone call, it doesn't have all the... To answer my question, every single figure shows a telephone call, right? I know the figure is not the end of the answer, but you've got to answer... If by a telephone call you mean something that doesn't have a voice communication and in which the user does not participate, there is a telephone call made in the embodiments that are shown in the figures, that's correct. But it's not a traditional telephone call as you and I would understand a telephone call. But the telephone call that is shown in all of the figures in the embodiment, it's basically when you have this call manager that calls a paper call number. I mean, that is a telephone call. There is a telephone call made to a paper call number in the preferred embodiment, that's correct. But the telephone call is only the communication of data from point A to point B. There is no voice communication. There is no participation by the user in a telephone call. So when we look at claim 13, I'm looking at index 87, column 10, and you see paragraph 13. It says, at least part in response to a purchase request information, in part an electronic communication to be originated from a mobile device. This mobile device, is that a telephone? Well, it could be the user's personal mobile device. It could be a computer. An iPad? It could be an iPad. It could be an interactive television, the specification mentions. The term electronic communication, is it limited? Because it says to be originated from a mobile device. So is this electronic communication solely limited to that from the mobile device? In claim 13, we are talking about a communication from a mobile device to a first destination. And we didn't get into, in claim construction, we did not get into what a mobile device is. The specification makes clear that there's a variety of different devices that could be, including a computer or a mobile phone with a browser. So if the electronic communication has to originate from the mobile device, then, and if I was to say that that's an iPad, and it's an iPad contacting this call manager or sending a signal to the call manager, then wouldn't that construction change the first destination construction? The communication that we're talking about, the electronic communication that we're talking about in claim 13, is not the communication from the mobile device to the call manager. It's a communication from the mobile device to the first destination. It's the way that the information about the user gets from the mobile device to the remote processing system, so that the information about the user can be used to put it on the bill. In all of the embodiments, there's not a situation where the mobile device contacts the call manager, then this call manager, which I take to be some sort of remote application, contacts the, makes the telephone call. That is one embodiment for sure, but it's not the claimed embodiment in claim 13. In the specification, it talks about sending a message from the mobile device to the call processor, and then the call processor makes the call, or the call processor can send a message back to the mobile device and say, you make the electronic communication at a time of your choosing, and that's the embodiment that's claimed. Is there anything in the prosecution history at all that shows why claim 13 was allowed, or that there was any reason independent of the reasons for allowing claim 1? In the 933 patent prosecution, there was no discussion of prior art. There was just the examiner's listing of the reasons for allowance, and those reasons included the fact that there's no voice call, and the user's not talking about his purchase. But in the parent applications, the grandparent applications, there's a discussion distinguishing a traditional telephone call to a pay-per-call service. It's distinguishing that from the invention, which doesn't include those items. So I think if you look at the examiner's statement for allowance, what he's doing is reflecting the fact that this is not a traditional telephone call to a pay-per-call service. It is, in fact, just the communication of data that doesn't involve voice and doesn't involve communication about the purchase. Well, it's not a traditional telephone call, but it is still a telephone call, right? If you look at the specification, if we read this in light of, as a person of ordinary skill in the art would understand it, after reading the specification, the specification doesn't describe anything that's anything other than communication of data. You can use a telecommunications network to send a text message, and you still use the same systems and methods for placing and routing telephone calls, but you're not actually placing a telephone call. You're simply sending data. If you look at what's described in the specification, it describes systems such as SS7, ISDN, AIN, which are all different systems and methods of placing and routing telephone calls. But if you look, for example, at appendix on page 559, it describes what SS7 is, and it says it sets up systems for supporting voice, text, data, or video. So these systems and methods that are described in the specification can be used as they're used in the preferred embodiment, but they can also be used to simply send the data that's required. But is there an example anywhere in the specification, in the written description, where the billing triggering event is anything other than a call? There's nothing other than a call that's described specifically, but the systems that are described are all used for sending electronic communications, and that's the only thing that's sent in this call, per se. It's not a telephone call in the sense that you're using it like we would use a telephone call. There's a call made, and these systems and methods are used, such as SS7, to send text data or data down to make the billing event happen. So there's no disclaimer, and that's the point here. It's not our burden to show that more than one embodiment is disclosed. We were required to disclose the best mode that our inventors knew to make it, and they did that. But really this is a question of whether there's clear disclaimer, and there is no manifest disclaimer of any scope of the electronic communication. And it is simply a communication of electronic data. You put a lot of emphasis on your claim differentiation argument, but isn't it true that claim differentiation is a concept that's usually used when you're talking about comparing a dependent claim to an independent one? I don't think it's really a claim differentiation argument in that sense. It's more of a claim differentiation argument in that they use two different words, and so the presumption is that those two different words have two different meanings. And it's pretty clear, I think, in ordinary parlance, one would not compare an electronic communication to a telephone call. It's much broader than that. And in fact, the only record evidence here, and it's unrebutted, is that a person of ordinary skill in the art, reading this specification, would understand that the electronic communication that's being described would not just be a telephone call, but would also include things like text messaging over a telecommunications network. In your view, in Claim 13, is there a difference between a communication as used in that first line with an electronic communication as used later? I think electronic communication just makes clear that this is not something that you're speaking. It's an electronic communication of information. It's emphasizing the point that this is not a voice call. This is not a communication that's done, I can't call up and say, hey, I'd like to charge on this guy's phone bill $45 for an item he purchased. This is an electronic communication, not a voice communication. Okay, you're into your rebuttal time. I'll give you the rest of it. Thank you. May it please the Court, Dan Bagatelle on behalf of the Appalachians, with me is Daniel Levinthal on behalf of AT&T Mobility. The District Court, correct? Let's start with, when we say electronic communication, it just seems to me that just the plain meaning of that would encompass many different forms of communication. A telephone call, different type of signals that exist, all of those are electronic communications. Any signal sent electronically, just to begin with here, would be an electronic communication, correct? Well, yes, in the sense that if you just viewed it in the abstract, an electronic communication could be a communication. Okay, so now we look at it in terms of the patent. When we look at Claim 13, it says, an electronic communication to be originated from a mobile device. So it limits whatever construction of electronic communication to one that originates from a mobile device. Are all of the embodiments here, are they so limited? Is there any way that this patent works where the call manager, not the mobile device, the call manager makes the call or sends a signal to the 900 number? Yes, there is a figure two embodiment. It's not claimed. We call it the spoofing embodiment, in which the call manager makes the call. It resets the ANI to the number for the billing number of the purchaser and makes the call itself. That's the spoofing embodiment, but it's not claimed. It happens to be shown in Figure 1 and in Figure 2, but it's not what's claimed in Claim 1, Claim 13. And I don't think CallWave disagrees with that. Is it your view that Claim 1 and Claim 13 are essentially the same thing? They are similar, and that's common, of course, between independent claims. There are some differences. I think if you take a look at Page 41 of our brief, we set out a chart of the differences. For example, Claim 13 also requires a remote processing system associated with the destination of painting billing information. So there are some differences, but that's very common among independent claims, to try to claim essentially the same thing using slightly different language. Really, the question here is whether, if you view the claims in view of the specification, a skilled artisan would understand that the electronic communication is a phone call to a paper call number. Whether you view this as a Phillips issue of interpreting a seemingly ambiguous claim or a disclaimer or disavowal, it's the same result because of three things. First of all, the present invention language. The patent uses the word present invention about 12 times. Four of them are just outright unequivocal. It says four times that the present invention relates to systems and methods for routing and placing telephone calls. Then it goes on to say that embodiments involve providing ways of making automatic calls to paper call numbers or services. Every single time it refers to the present invention as involving a call to a paper call number or service. The second thing this court looks to is the problem to be solved and how it's to be solved. That's in the background of the invention in column one. It says conventional commerce systems fail to provide an automated apparatus that places or routes calls to paper call numbers or services as part of an online purchase transaction. This was a long prosecution history here, right? Yeah, there were continuations. Claim 13 comes in later. The fact that claim 13 might have been conceived of a little bit later doesn't mean that the specification doesn't ultimately support something slightly different. That is true, but in this case the specification only supports the only embodiments disclosed. Every embodiment involves an automatic call to a paper call number or service over phone lines. That's the only thing this patent discloses from the title to the abstract to the summary of the invention to the disclosure of each embodiment. That's the only thing this teaches. It uses the words present invention. It describes the problem to be solved as the inability to bill using paper call services. That's what they're trying to do here. What about the dependent claims that follow claim 13? Claim 16 says the method as defined wherein the mobile device is a cellular phone. If the mobile device is a cellular phone in claim 13, why do you need claim 16? Because it could be a tablet. It actually shows a mobile computer in figure one. You could have a laptop that's equipped with some way to dial up. It doesn't necessarily have to be a cell phone. What was going on here? Does it have to be a telephone call? Yes. That creature? Yes. We know that because not only because of what... Telephone networks are used to send different types of signals or can be. Is that correct? Well, you can have voice and you can have data, but it all goes... Like a fax line, a fax... Sure. You can send voice or data over a telephone line, but it's still a telephone call. A fax is a good example of that because it sends data. But a lot of what my friend has been talking about has been signaling methods. And all of those signaling methods described in the patent relate to telephone calls. First of all, the ANI is only a telephone call phenomenon. So all of the signaling that they're talking about is a telephone-type signaling. Whether you're using SS7 or something else, it is still telephone call signaling. He mentioned text messaging. There's no discussion whatsoever of text messaging in this patent. Their expert mentioned it briefly, and the district court didn't credit that. So there's no mention whatsoever of text messaging in this patent. The reality is... But couldn't an electronic communication be a text message? Do you have to call it out by name for it to be an electronic communication? Well, the point is that even though they used... to a first destination. The question is whether you can expand the scope of the entire patent really by using generic language. I personally believe that electronic communication is ambiguous. But even if you don't believe that, if you view it as a disclaimer or disavowal issue, we have words of manifest restriction and exclusion here because we have present invention language. Because we have language where we describe what the invention was trying to accomplish, the problem to be solved, and how it was solved. It was only solved in one way, and every embodiment in the patent describes that. Those three things together, there's only really one conclusion one of skill in the art could draw. It seems to me that we're using the tools of claim construction to do a task for which they aren't really very well suited. This is not to suggest that we don't do this on a regular basis. But this problem, and you've alluded to it now, it seems to me to be that they came in later with what is arguably new matter and threw in a claim that isn't supported by the rest of the patent. That's certainly consistent with the way you've presented the case, although that, unfortunately, for present purposes, is an invalidity point. Let me put it this way. Suppose that claim 13 had had language in it which explicitly said, not limited to a paper call number to a paper call number or service, so that it was clear as a bell that claim 13 was not limited in this way. Then all your arguments about the specification would be ineffective, right? I would agree with you that if they expressly said, for example, a non-telephonic communication, then we would be arguing a 112 issue. But that obviously isn't the scenario here. It isn't, but if we conclude that it's pretty close to that and that, in fact, what electronic communications was intended to do was to extend beyond the phones, then doesn't this really belong in an invalidity analysis? Well, if it were clear. But, for example, there's no prosecution history in which they said that we're actually trying to expand the scope of our claims to something more. We have to construe it in light of the specification. I think it's very similar to the Honeywell case in which there was a Honeywell case that we cited in our briefs. Which you're familiar with. Which I'm familiar with, having been the losing counsel in that case. But I got religion. But in that scenario, actually, I will say that I had not only the advantage of a broad claim language, but also prosecution history in which the patentees told the examiner that they were trying to broaden it out. And the court said it wasn't good enough because you had very clear language in the specification saying the present invention relates to a fuel filter. And so your fuel injection system component is limited to a fuel filter. And in this case, we have that in spades. We have repeated mentions of the present invention limited to phone calls. That's all they've described. That's all they've claimed. I think if all you're doing is making a generic statement, an electronic communication, it's ambiguous on its face because you don't know if they're meaning literally every electronic communication or do you need to read the specification and determine what kind of electronic communication are we talking about. Doesn't this claim speak to two different types of communication? One, just communication by itself. And then electronic communication. It seems to me when you look at the claim, for example, if you look at line 25, column 10, it says we're in via the communication. It's talking about the communication. When you say, well, what communication? When you look up above, you have communication and also you have electronic communication. And the court construed electronic communication to be a telephone call. But the term communication, I don't think it was not construed. And that one, wouldn't you say that that can be any type of electronic signal? No. I think, Your Honor, that the communication refers back to the previous communication discussed. There are two communications in this patent. The first is to the call manager to say, hey, we want to buy something and here's how much we want to pay for it. That can be over the Internet. In any means. Exactly. The second communication is always a telephone call. What's going on here is they're trying to use an existing paper call infrastructure. This is a nice way to transition without having to build a whole new system. It's sort of plug and play. Describe to me why is this claim limited to the latter and does not include the former? Why is it limited to which? The telephone call to the 900 number. Our discussion today, yes. Yes. It is limited to that because that was the invention they claimed that the problem they claimed to have solved and how they solved it all involved making a telephone call to a paper call number. They didn't want to invent a whole new infrastructure. They didn't want to use a whole new signaling method. They wanted to use an existing method and yet have a way that you wouldn't have to use your credit card number or other things that might have some security disadvantages. The supposedly ingenious solution was to use this existing 1-900 capability. That's what this patent describes. If you read it from start to finish, that's the only thing it's ever talking about. That's my invention. That's what they're talking about. Claim 13 actually refers to billing via a phone bill. Yes. But yet it doesn't refer to a phone or a call anywhere else. Isn't it a little strange to have the phone bill reference precisely in there but not refer to a call elsewhere in Claim 13? I don't think so because what they were trying to add in that point was that it would go on to a telephone bill that somebody would be getting from their phone company. In fact, I think it supports the idea that if it's going to your phone bill, it's not surprising that it's going to involve a communication over a phone network. You don't absolutely have to do it that way, but it's certainly, I think, consistent with the idea that they were trying to bill to a phone bill a communication that's made over a paper call service. That's how it's done. You call up a paper call service and it tells you it can either be by the minute or by the charge. It goes to that 1-900 portion of it that rates and bills it, and it ends up on your phone bill. So I think it's entirely consistent with the rest of the patent. The only difference here is that they tried to broaden out some of the language, but I think this Court's cases have said I think something like 10 or 12 times that claims can't enlarge what is patented beyond what the inventor has described as his invention. There may be an exception to that where somebody is expressed saying, I am not claiming what is in my written description, but that's not the case. I'm sitting on the fence. I'll let you know on whether this claim addresses both the – but I see two different types of communications, the latter one being the call from the call manager to the 1-800 number. That's one, and I believe that's a telephone call, but there seems to be another call or another signal that's sent to, for example, a remote processing system that's associated with the designation, and that doesn't have to be a telephone call. No, I don't think they're arguing that. First of all, the call is always from the mobile device, and the remote processing – But we know the device can – yes. We know that the device can be an iPad. Yes. The remote processing is – I think, basically, the remote processing is a way that you can rate and bill the call. So the call manager is remote, correct? Yes, the call manager is 18, but it's not the remote processing system. The remote processing system they describe in the patent, they say actually can be affiliated with the call manager system, but basically it's a way to – Something's got to tell that remote system, that call manager, go ahead and make the call to the 1-800 number. Yes. Why isn't that part of what we're looking at? Why do you say that this claim does not include that call? Oh, it does, in the sense that the first line, receiving information over a network relating to a user's purchase, and then partly in response to that request information, which says, I want to buy something, and I want to bill it to this phone number. And then the call manager tells the mobile device to make a call to a certain number, and then it's rated and billed just the way 900 calls are done. You basically go through a toll gate, it strikes a timer, and then it gets billed to that call. It's that second communication that has to be to the pay-per-call number or service. Correct. The first can be on – you can do it by smoke signals, if you like. Yes. I'm not sure that was enabled, but yes. Electronic smoke signals. There we go. No, it's true that there's a data communication that can be used to set up the call, and that's what the patent describes. But your point is the call has to be made ultimately. I mean, this is a patent that's called a call-routing apparatus, and that's what it describes from start to finish. There are various – we're not limiting it to a single embodiment. I mean, there are a variety of ways you can set this up. You can send it over one network, multiple networks. You can use a variety of different signaling mechanisms, a variety of ways to rate and bill the call. All of that's generic, but all of this is described as the inner workings of a pay-per-call service, and that's what they were trying to do throughout this patent. There is nothing else described. Thank you. You have about three and a half minutes. Thank you. He talked at length about what a person of ordinary skill in the art would understand, but he provided no evidence of that. It's simply his opinion about what a person of ordinary skill in the art would understand. The unrebutted evidence of what a person of ordinary skill in the art would understand from reading this specification is that it would include a telephone call or a text message, both of which come from a mobile device, both of which use telecommunications networks, and both of which provide data to the other side and not a voice communication. Did you ever suggest to Judge Andrews that perhaps claim construction wasn't the appropriate vehicle or the appropriate lens through which to examine the question that's really being posed here? That did not come up in the oral argument or in the briefing. Judge Andrews was at the time doing a Markman hearing, and we addressed the point of electronic communication and first destination, but we did not address that point. But you never said, Judge, let the chips fall where they may. There might be a problem later down the road that we have to address, and they have to prove by clear and convincing evidence as it relates to new matter, but that's not for today. Well, it's certainly something we thought about. I can't remember if it came up at the oral argument or not, to be honest. The other thing that he talked about, and from what I've heard, the defendant's sole argument is that there's one embodiment disclosed and only one embodiment, and therefore you have to follow that embodiment. The only language of disclaimer that we've heard is this present invention language, and it says it does not say the present invention is limited to a telephone call. It does not even say the present invention is related to a telephone call. What it says is the present invention is related to systems and methods for making and placing telephone calls. In this case, it's very different than the Honeywell case. The Honeywell case said the present invention is related to a fuel filter. It did not say the present invention is related to systems and methods for filtering fuel, and if it had done that, then I think the result would have been very different because Honeywell was trying to say it's broader than just a fuel filter. It, in fact, involves all the systems and methods for filtering fuel. Here, we're involving the systems and methods for making a telephone call, but it doesn't have to be a telephone call because the only information that's described in the specification, the only information that's transferred is electronic communication of data. I'm not sure I understood your last statement. You said here we're dealing with methods and systems for routing and placing telephone calls, but it doesn't have to be a telephone call. Right. Any more than the systems and methods for filtering fuel is only the fuel filter. There's other things in that system. We're talking about not just placing a telephone call, but also routing telephone calls. Do you mean to say that there need be no telephone call at all? That's correct. Therefore, that's not, in your view, inconsistent with saying the system and method for routing and placing telephone calls? No, because I can take out my mobile telephone. I can make a text message. It uses the same systems and methods of placing and routing telephone calls, but it's not a telephone call. It's a text message. And the only evidence in this case, and it's completely unrebutted, is that a person of ordinary skill in the art, reading this specification, would understand a text message to be the same as what's disclosed in the specification, for the purpose of what's disclosed in the specification. All of this Court's cases require clear disavowal. There's no advantage to using a telephone call over a text message. There's no purpose of the invention that's not solved by doing a text message instead of a telephone call. There's simply nothing of manifest disclaimer in this specification. And they haven't identified any. Okay. Anything else? Thank you. Thank you, Your Honor. The case will be submitted.